Monell, J.
(dissenting). The facts found in this case by the learned justice, briefly stated, are these: McKinney and Wolcott, who were jointly interested in the transaction, by false and fraudulent representations of the value of the stock of the G-old Hill Mining Company, induced the defendant to purchase 1,600 shares of such stock, and to give in payment thereof his two promissory notes for $2,600 each, payable to the order of McKinney. About the time of the maturity of the first of said *170 notes (neither of which had been used), McKinney and Wolcott, for the purpose of procuring collateral security, led the defendant to believe that such notes had been used, and that the same could not be renewed unless collateral security was given. It was thereupon agreed between the defendant and Wolcott that the former should make his two other promissory notes for $2,750 each, to be secured by mortgage on real estate, and on delivery thereof to Wolcott the defendant should receive his said first two promissory notes and $130 in cash, the balance of said last notes ($170) to be retained by Wolcott. Such agreement was carried into effect. The notes and mortgage were delivered to Wolcott, who returned to the defendant the two notes for $2,600 each, and paid him the $130 in cash, retaining the $170. The mortgage was assigned and the notes delivered the next day to the plaintiff, who paid to Wolcott the full face thereof, less the interest and a small legal charge. The amount retained by Wolcott was found to exceed the legal rate of interest, and the notes and mortgage were adjudged to be void for usury.
There is no question of law arising in this ease. If the finding of the court that there was usury in the transaction, and that Wolcott was a principal party, is sustained by the evidence, then the notes were void, even in the hands of the plaintiff, who became the owner before maturity, for a valuable consideration, and without notice of the usurious agreement.
The usurious agreement was made out upon undisputed evidence, if Wolcott was a principal party. It is not denied that $170 was retained out of the notes, part of which was for the discount and part for a fee for examining the title. But about $50 was retained by Wolcott, which, he says, was allowed to him by the defendant as “ a commission for his services in conducting the negotiations and indorsing the paper.”
If, therefore, Wolcott was jointly interested with McKinney in the first notes, then any agreement made between them or him and the defendant, whereby more than legal interest' was taken for the forbearance of the debt, rendered the notes void.
There is another question raised by the plaintiff, the answer to *171 which again, somewhat, if not wholly, depends upon whether Wolcott was a principal. It is this: That the notes and mortgage had no legal inception or vitality until they were delivered to the plaintiff. That would be so, I think, if Wolcott had received them to negotiate and raise money upon for the defendant as his agent. But if Wolcott was interested in the first notes, and received the second notes and the mortgage in renewal of the first, then the notes and mortgage had their legal inception from such delivery to Wolcott, and are affected by the usurious agreement.
The whole case, therefore, turns upon what relation Wolcott bore to the transaction.
The court has found such relation to be that of principal; in other words, that Wolcott and McKinney were jointly interested in the stock sold to the defendant and in the notes received in payment.
There was no direct or positive proof to establish the interested relation of Wolcott to the transaction. But there was a chain of facts and circumstances, from which it was deemed by the court to be legitimate to draw the inference of his connection.
The entire transaction between all the parties, except the plaintiff, as found by the court, was founded and consummated in fraud. The representations which formed the inducement for the purchase were false. The stock was worthless. To perpetrate this and possibly similar frauds, the evidence authorized the inference that a conspiracy was formed between McKinney, Wolcott, Walker, and Eustis, who were the owners or principal owners of the mining company. They occupied the same office. participated either actively or tacitly in the fraudulent representations. They put the stock upon the market, made fictitious sales and purchases, for the purpose of creating a supposed market value and thereby inducing the unwary to purchase, during all which time they knew the stock they were endeavoring to sell was without any real or substantial value.
. The stock was never delivered to the defendant. It was represented to him that Walker would hold all the stock of the *172 company, yet when applied to he said he had given it to Wolcott. The first notes, although payable to the order of McKinney, remained, it seems, in the possession of Wolcott, and were not negotiated. The conversations, negotiations, and arrangements for renewing the notes were all with Wolcott, who acted throughout as the principal, and McKinney was no longer known in the transaction.
The false representation that the first notes had been discounted were made as well by Walker as by Wolcott, and such representation induced the giving of the mortgage. Wolcott appears throughout to have been the active manager and operator in carrying out a scheme to defraud the defendant, and the other jpa/rtiaeps fraudis to have been his coadjutors.
Most of the facts which go to establish a conspiracy between these parties is without contradiction. No attempt was made to disprove the connection of Walker and Eustis with the mining company, nor their complicity in the attempts to create a fictitious market value for the stock.
Neither McKinney, Walker, nor Eustis, who were competent witnesses, was examined; and Wolcott’s evidence was confined to the alleged usurious agreement.
The answer of the defendant had sufficiently alleged the connection and interest of Wolcott, and it is a little singular, if he was a mere agent, that he was not interrogated on that subject. And the absence of such witnesses from the trial was a circumstance at least of suspicion.
A careful reading of the evidence will not fail, I think, to satisfy any one that the learned justice was justified in making the finding that Wolcott was interested with McKinney in the transaction; that they acted in concert, and that the acts done and representations made by one were done and made in the interest of the other.
Such finding, in my judgment, disposes of the case; for, as I have already stated, if Wolcott was a principal party, the notes and mortgage had a legal inception when delivered to him. As between the defendant and Wolcott, there was a good and suffi *173 cient consideration, and the securities, except for the usurious agreement, were valid instruments in the latter’s hands. It is not like a case of accommodation paper, made for the sole purpose of raising money upon it (Catlin v. Gunter, 11 N. Y. R., 368). The distinction is clearly stated in Knight v. Putnam (3 Pick., 184). If a note made for the purpose of raising money is discounted at a higher premium than the legal rate of interest, and none of the parties can, as between themselves, maintain a suit on it, provided it had not been discounted, then such discounting is usurious, for it is then that it first had its inception.
Being valid, therefore, as a mortgage in the hands of Wolcott, the usurious agreement immediately attached. If it had not been assigned, the defendant, as between himself and Wolcott, could not have set up a want of consideration. And even though we should believe that the notes were made for the purpose of raising money upon them to take up the first notes, they were yet no less valid, so far as a consideration was needed; and the negotiation of the securities was for the benefit of Wolcott, and not of the defendant. It is claimed, however, that the evidence does not sustain the finding of an usurious agreement; that on that subject the defendant and Wolcott are in direct antagonism. I do not find anywhere that Wolcott has countervailed the allegation, or the proof in support of it, that he was a party in interest. In his testimony he confined himself to what transpired at the renewal of the notes; and although he stated that he merely undertook to assist the defendant in procuring a loan, to enable him to take up the prior notes, he did not disavow his interest in the transaction.
If it was true that Wolcott was part owner of the notes, or even had been prior to their being discounted, if they had been discounted, that was of itself a sufficient consideration for the renewal notes, and it is, therefore, immaterial that Wolcott agreed to assist in getting the money.
It seems to me, looking at all the evidence, that the defense of usury could be established without regard to any contradiction in the testimony of Wolcott and the defendant, and without ren *174 dering it necessary to decide upon the weight of the evidence or the credibility of the witnesses.
If, however, it were necessary to decide upon those matters, we are concluded by the decision made at Special Term. A finding upon a conflict of evidence will not be disturbed. The interest of the conflicting witnesses was probably balanced, and the affirmative, on the issue of usury, was with the defendant; but I do not know of any rule of law that requires a court to decide a case against the party holding the affirmative, merely because the contradicting witnesses are balanced in interest and of equal credibility. In such a case, whichever way the fact is found, the appellate court will not reverse.
It is enough, however, to say that there were corroborative facts and circumstances in this case which gave a fair preponderance to the testimony of the defendant over that of Wolcott.
The objection to the admission of evidence that Walker and McKinney were charged with fraud in another action was, I think, properly overruled. One of the issues in the case was that the notes had been fraudulently obtained and were negotiated to the plaintiff after notice. Upon that issue evidence of other or cotemporary frauds was admissible. But as the decision of the case was made on the defense of usury alone, the evidence complained of was immaterial, and could have had no effect upon the decision.
There was no finding that usury was taken by the plaintiff, or that he was a party to or cognizant of the corrupt agreement of Wolcott. Nor do I find any evidence to support any such conclusion. On the contrary, it appears, and is without contradiction, that the plaintiff advanced the whole face of the notes, retaining only the legal discount and a small fee for examining the title. Nor was there any proof that he had any knowledge of the fraudulent acts of those from whom he received the securities.
It was his misfortune to have taken a mortgage, which, by the laws of this State, is absolutely void, leaving him with only his remedies against the party from whom he received it.
I think the judgment must be sustained, and am, therefore, in favor of its affirmance, with costs.